# Western Union Telegraph Co. *v.* Boteler.

*Damages for Delay in Delivery of Telegram.*

(Decided April 17, 1913.   62 South. 821.)

1. *Telegraphs and Telephones; Messages; Collection of Charges; Agency.*—A messenger of a telegraph company delivering messages received at the terminal office is the agent of the company and not of the sendee, and a payment of the charges to such messenger is a payment to the company.

2. *Same; Delay; Payment of Charges; Effect.*—The right of the sendee to recover damages for negligent delay in delivery of telegraph message is not affected by the fact that the charges thereon were paid by her husband, who was present when the message was delivered, although the husband did not intend to make the wife refund the money.

3. *Same; Jury Question.*—Under the evidence in this case it is a question for the jury whether the telegraph company was guilty of unreasonable delay in the delivery of the message after notice that special delivery charges would be paid.

4. *Same.*—Where a service message demanding special delivery charges is sent, and an answer guaranteeing the charges is received by the company, the question of whether the telegraph company performed its duty in delivering the message is for the jury.

5. *Appeal and Error; Harmless Error; Charges.*—Where a count in a complaint is withdrawn by the plaintiff before the jury retires, any error in refusing to charge the jury that they could not find for plaintiff under that count, is harmless.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by Lula W. Boteler against the Western Union Telegraph Company for delay in delivery of a

message on which special delivery charges had been paid. Judgment for plaintiff and defendant appeals. Affirmed.

.O. KYLE, and CAMPBELL & JOHNSON, for appellant. So far as the question of technical liability is concerned, this case cannot be distinguished on the facts from the cases of *W. U. T. Co. v. Brown,* 59 South. 329; *Same v. Adams,* 154 Ala. 657. On these authorities, the affirmative charges should have been given for defendant as requested.—*Heathcoat v. W. U. T. Co.,* 156 Ala. 339; 12 Enc. of Evid. 419; 77 Wis. 174; 68 Am. St. Rep. 316; 12 Am. St. Rep. 317; 27 Am. St. Rep. 487. The action was in tort, and plaintiff has not proven any damages in person or estate.—*W. U. T. Co. v. Jackson,* 163 Ala. 9; *W. U. T. Co. v. Brown, supra.* Counsel discuss the other assignments of error, but without further citation of authority.

CALLAHAN & HARRIS, for appellee. Having undertaken the duty of delivering the telegram for reward, whether primarily that duty rested on the company or not, it must have acted diligently.—*W. U. T. Co. v. Wilson,* 93 Ala. 32; 43 L. R. A. 218; Thompson on Electricity, sec. 300; *Hood v. Telegraph Co.,* 47 S. E. 607. The fact that the husband paid the charges on the message for his wife did not affect her right to recover, although he may not have intended that she should repay it.— *W. U. T. Co. v. Merrill,* 144 Ala. 623; *Same v. Krichbaum,* 42 South. 16. Under the facts in this case the question was a jury one.—37 Cyc. 1668 and 1728.

DE GRAFFENRIED, J.—When a messenger boy of a telegraph company, as its delivering agent, brings me a telegram, that messenger boy is, in and about the de-

livery of that telegram, the telegraph company itself. When I receipt to him for that telegram I receipt to the telegraph company for the telegram. If that telegram is sent to me "collect," or if there are charges on that telegram to be paid when the telegram is delivered to me, and I pay those charges to the messenger boy, I make the payment through him to the telegraph company. The messenger boy is the *messenger boy* of the *telegraph company,* not *my messenger boy,* and if it should turn out that the money I pay the messenger is the amount which the telegraph company owed the messenger boy for bringing me the telegram, the payment by me of the money to the messenger boy would still be a payment by me to the telegraph company of a debt which I owed it for delivering to me the telegram through the messenger boy. In such a case, as the receipt by me of the telegram from the messenger boy and the payment by me of the charges to the messenger boy were contemporaneous—parts of one transaction—the payment of the money would, in law, have the same effect as if the money had been paid before the telegram was delivered. In such a case, if the *charge* of the telegraph company is a lawful charge, I am *not entitled to receive* and the telegraph company is under *no legal obligation to deliver the telegram to* me, until *I pay* such legal charges. In such a case the money paid by me or for me to the telegraph company is, *as between me and the telegraph company, my money.* As the telegram is addressed to me, it is *my telegram,* and if it is *delivered* to me upon the *payment of the legal charges,* it does not matter out of *whose pocket* the money comes to pay the charges on the telegram, provided, of course, it is honest—not stolen—money. It is my debt that is paid—not the debt of some other person—and as between me and *my creditor,* the debt being

extinguished, the money with which the debt is paid is my money, *a part of my estate.*

In the instant case a telegram, upon which there were certain messenger charges to be paid when the telegram was delivered, was delivered to the plaintiff. The telegram was addressed to the plaintiff, was *her telegram,* and the charges represented a lawful charge of the telegraph company against the plaintiff for delivering to her the telegram.

The husband of the plaintiff, who was present when the telegram was delivered, paid the charges to the messenger out of his own money, without intending to make his wife refund it. The telegraph company now contends that the plaintiff cannot recover damages suffered by her on account of its negligent delay in delivering the telegram because the telegram *cost her nothing,* because, forsooth, she was not damaged *in her estate.* As between the plaintiff and the telegraph company, the money was the plaintiff's money, and there is nothing in *this* contention of the defendant.

1. It appears from the evidence that Lula A. Boteler lives six miles from a post office known as Danville. Her post office is Danville, which is an unincorporated village several miles from Hartselle. Hartselle and Decatur seem to be the nearest railroad stations to Danville, and between the unincorporated village of Danville and Hartselle there was, at one time, a connection by telephone, which telephone was used by the Western Union Telegraph Company for the purpose of transmitting telegrams which were received by it for transmission to Danville. Mrs. Boteler is the wife of J. M. Boteler, who is over 60 years of age, and Boteler testified that he is the only J. M. Boteler who lives near Danville, and that he has resided in that community for 50 years. In other words, the evidence tends to show

that Mr. Boteler was known by all the residents of Dan-
ville, well known there. He also seems to have lived for
four years in Hartselle. In fact, the agent of the Wes-
tern Union Tedegraph Company at Hartselle seems to
have known Boteler, and he testified that he found out
in 30 minutes after he received the message, to which
we hereafter refer, the place where the plaintiff lived.
Mrs. Boteler had a brother, Jim Anderson, who lived
in the country near Tuscumbia, and he died, unexpect-
edly, on Saturday night December 18, 1910, at his home.
On Sunday morning, the 19th, Mrs. Linda Anderson,
the widow of said Jim Anderson, sent a message to Mrs.
Ferguson, who resided in Tuscumbia to send a tele-
gram to Mrs. Boteler, at Danville, informing her of
her brother's unexpected death, and asking her to come.
At 9:15 that morning a brother of Mrs. Ferguson de-
livered to the agent of the Telegraph Company at Tus-
cumbia the following message for transmission and de-
livery: "Mrs. J. M. Boteler, Danville, Ala., via Hart-
sell. Your brother Jim Anderson died unexpectedly
last night. Come. Linda." The words "via Hartselle"
were written in the message by the agent, and the mes-
sage was written upon one of the ordinary telegraph
blanks of the Telegraph Company for "unrepeated"
messages. The agent demanded and was paid 50 cents
for the contemplated service, 25 cents for the toll to
Hartselle, and 25 cents for the telephone toll from Hart-
selle to Danville. The message left Tuscumbia at 9:30
a. m., and reach Hartselle at 10:15 a. m., or within
three-quarters of an hour after it left Tuscumbia. The
agent testified that he "tried to communicate with Dan-
ville by telephone but *the telephone exchange had been
discontinued."* The agent at Hartselle, *who then knew
where plaintiff lived,* then sent to the office at Tuscum-
bia the following office message: "Yours date to Mrs.

Boteler signed Linda undelivered. No telephone con-
nections at Danville. Advise if charges guaranteed for
special delivery." *When* that office message reached
Tuscumbia the evidence fails to inform us. The evi-
dence does show that Mrs. Ferguson's brother, who, in
defendant's office at Tuscumbia, wrote out the mes-
sage signed "Linda," and paid the 50 cents toll, lived
in Tuscumbia—which is a small town—and that the
agent of the defendant, who started the telegram on its
way from Tuscumbia to Danville, not only knew him
but knew his sister, Mrs. Ferguson, Jim Anderson, the
deceased, Mrs. Linda Anderson, and the plaintiff. The
office message reached Tuscumbia, and the jury were
authorized to infer that it reached there within a rea-
sonable time. The agent at Tuscumbia, some time dur-
ing Sunday—but at what time the evidence fails to in-
form us—ascertained that the special delivery charges
inquired about in the office message would be guaran-
teed. We know this because the agent at Hartselle—
the same agent who received the message signed "Linda,"
and who sent to Tuscumbia the above office message—
testified that "I received an answer to that service mes-
sage at 12:30 Sunday night." The answer to the ser-
vice message stated that said special delivery charges
would be paid. Says this witness: "I came on duty
7:15 next morning after receipt of service message. I
*then* employed Mr. Walden, a special messenger to
carry it." The message was given to Walden about 8
o'clock Monday morning and Walden delivered it to
the plaintiff at her home at 11:00 or 11:15 that morn-
ing, too late for her to go to Tuscumbia to her brother's
funeral. On that same Monday morning the agent of
the defendant informed Mrs. Ferguson in Tuscumbia,
that the message signed "Linda" had not been delivered,
and that *woman* living in Tuscumbia, not Hartselle,

and not engaged in the service of the public, and therefore owing no *duty* to the plaintiff, out of womanly sympathy undertook in *her* way, on that same morning, to get to the plaintiff the news of her brother's death, and when Walden reached the plaintiff's residence he found that Mrs. Ferguson had already, in a way devised by her, a *half hour before*—but too late to aid the plaintiff—informed the plaintiff of her brother's death.

The message in this case showed on its face its extreme importance to the plaintiff. It showed on its face the unexpected death of her brother. It showed that he died Saturday night. It called the sister to Tuscumbia, evidently to the funeral, and as the death occurred on Saturday night, it was reasonably apparent that he would probably be buried on Monday. At Hartselle the office of the defendant is kept open day and night. When the agent at 12:30 Sunday night received the office message informing him that the special delivery charges would be paid, he *knew* how long a delay had already occurred, and how important it was *then* for the telegram to be delivered. And yet, without making any effort to get a messenger that night to carry that important message, and without making any effort to have one ready at an early hour the next morning, he goes to bed, rises in the morning, comes down to the office at 7:15 and then, for the first time, about 8 o'clock, employs a messenger to take the message.

The gravamen of the complaint is *not the failure* of the defendant, to deliver the message at *Danville,* but the *negligent delay* of the defendant in delivering the message to Mrs. Boteler *at her home,* and the damages which resulted to her by reason of that delay. If the defendant had carried out its original contract, and had delivered, at a telephone office in Danville, the message, this suit would probably not have been

brought. It was a question for the jury, under all the evidence in this case, to say whether the defendant was not guilty of unreasonable delay in delivering the message to Mrs. Boteler under the contract as modified by the office messages. It was also a question for the jury to say whether, if due diligence had been observed in delivering the message after the agent at Hartselle received the office message, to which we have above referred, the plaintiff would not have received the telegram in time to attend her brother's funeral.

"Where a service message demanding special delivery charges is sent, the company will not be liable for failure to deliver the message if the sender refuses to pay or guarantee the extra charge; and, if such payment or guaranty is made it does not become effective so as to require a delivery until the answering message advising the terminal operator of this fact is received, but the company will be liable for negligent delay in sending the service message, or in failing to make delivery of the message after the answering message is received."—37 Cyc. p. 1680.

When, according to the admissions of the agent at Hartselle, the information that the company would receive payment for the special delivery charges was received at Hartselle at 12:30 Sunday night, the agent knew the pressing necessity that existed for Mrs. Boteler to receive the message. He knew its importance to her, the place where she lived, and the delay which had already occurred in getting to her the important information which the message contained. What might constitute diligence in delivering one sort of a telegram might, the agent being fully informed of the nature and importance of the telegram, be unreasonable delay in delivering another sort of a telegram, and in this case, under all the facts, the question as to whether the de-

fendant performed its duty in and about the delivery of the telegram was a question for the jury.

2. The third count, which claimed exemplary damages, was withdrawn by the plaintiff before the jury retired. The trial court, therefore, committed no error in refusing to charge the jury that they could not find for the plaintiff under the third count of the complaint. There was no such count in the complaint when the case went to the jury.

There is no error in the record. The judgment of the court below is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.